■ The People of the State of New York, Respondent, v Gerald Einaugler, Appellant. [618 NYS2d 414] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (Firetog, J.), rendered July 22, 1993, convicting him of reckless endangerment in the second degree and willful violation of health laws, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed, and the matter is remitted to the Supreme Court, Kings County, for further proceedings pursuant to CPL 460.50 (5).

The defendant, a doctor who was employed in a nursing home, was charged and convicted of reckless endangerment in the second degree (Penal Law § 120.20) and willful violation of health laws (Public Health Law § 12-b [2]) in connection with

his failure to transfer a nursing-home patient to the hospital in a timely manner.

Viewing the evidence in the light most favorable to the People *(see, People v Contes,* 60 NY2d 620), we find, contrary to the defendant's argument, that it is legally sufficient to establish the defendant's guilt of reckless endangerment in the second degree beyond a reasonable doubt.

Upon the patient's admission into the nursing home from the hospital, the defendant mistook the patient's peritoneal dialysis catheter for a gastrostomy feeding tube and directed that the patient be fed through the peritoneal dialysis catheter. The patient received numerous feedings through the dialysis catheter before the mistake was discovered by a nurse. After the defendant was notified of the mistake, he telephoned the chief nephrologist (kidney specialist) at the hospital where the patient received dialysis. The nephrologist advised the defendant to "get the patient into the hospital". Nevertheless, although the defendant knew that peritonitis could be fatal if untreated, he did not direct the patient's transfer to the hospital for more than 10 hours after his conversation with the nephrologist. Upon her admission to the hospital, the patient was diagnosed with peritonitis, an infection of the peritoneum caused by the introduction of the feeding supplement into the peritoneal cavity. The patient died within days after being admitted to the hospital as the result of peritonitis. The testimony of both the prosecution and defense experts established that proper medical care required treating the patient as soon as peritonitis was suspected, and following the advice of the nephrologist. Thus, the evidence established that the defendant was aware of, and consciously disregarded, a substantial risk of serious physical injury to the patient by delaying her transfer to the hospital, and that his conduct constituted a gross deviation from the standard of conduct a reasonable person would observe in the situation *(see,* Penal Law § 15.05 [3]; § 120.20).

The defendant was also convicted of the misdemeanor of willful violation of health laws (Public Health Law § 12-b) in that he "willfully" violated Public Health Law § 2803-d (7) which prohibits the commission of "an act of * * * neglect". The term "neglect" is defined by the lawfully promulgated New York State Department of Health regulations as: "failure to provide timely, consistent, safe, adequate and appropriate services, treatment, and/or care to a patient or resident of a residential health care facility while such patient or resident is under the supervision of the facility, including but not

limited to: nutrition, medication, therapies, sanitary clothing and surroundings, and activities of daily living" (10 NYCRR 81.1 [c]). The trial court instructed the jury that in order for it to find the defendant guilty of willful violation of the health laws, it must find that the defendant "willfully committed an act of neglect" and "[w]illfully means, knowingly". The trial court's instruction concerning the requisite standard of mental culpability is in accord with the decision of the Court of Appeals in *People v Coe* (71 NY2d 852). In that case, the Court of Appeals stated *(People v Coe, supra,* at 855): "We hold that the Legislature, in using the term wilfully in Public Health Law § 12-b, intended a culpable mental state generally equivalent to that required by the term 'knowingly' *(see,* Model Penal Code § 2.02 [8] [Official Draft and Revised Comments 1985]; *see also, People v Angelakos,* 128 Misc 2d 844, 848, *revd on other grounds* 70 NY2d 670; *United States v Bishop,* 412 US 346, 360)". Contrary to the defendant's argument, we find no constitutional infirmity with his conviction under the Public Health Law *(see, Matter of Slocum v Berman,* 81 AD2d 1014; *People v Superior Ct. [Holvey],* 205 Cal App 3d 51, 252 Cal Rptr 335; *cf., Matter of Levine v Whalen,* 39 NY2d 510). Moreover, as acknowledged by the People at oral argument, the requisite mental state necessary for a conviction for violating Public Health Law §§ 12-b and 2803-d requires a showing of more than simple negligence in the exercise of a clinical medical judgment, but rather requires proof of a "willful" failure (Public Health Law § 12-b) to "provide timely, consistent, safe, adequate, and appropriate * * * treatment, and/or care" (10 NYCRR 81.1 [c]; *see, People v Coe, supra).* Therefore, contrary to the arguments raised by the defendant in the *amici curiae* brief of, *inter alia,* the American Medical Association, this case does not support the proposition that medical professionals need fear the prospect of unwarranted criminal prosecutions for honest errors of medical judgment.

We have examined the defendant's remaining arguments and find them to be either unpreserved for appellate review or without merit *(see,* CPL 470.05 [2]; *People v Lucchetti,* 33 AD2d 566; *People v Malmud,* 4 AD2d 86; *People v Gonzalez,* 199 AD2d 412). Mangano, P. J., Thompson, Sullivan and Miller, JJ., concur.