Charles Edward **ROBINSON**, Petitioner,

v.

**Harold J. SMITH, Superintendent, Attica Correctional Facility,** Respondent.

No. CIV–77–300E.

United States District Court,
W. D. New York.

Feb. 9, 1982.

Charles Edward Robinson, pro se.

James L. Kennedy, Asst. Atty. Gen., Buffalo, N. Y., for respondent State of N. Y.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

This is an action for federal habeas corpus relief. After a trial by jury in the New York Supreme Court, Genesee County, petitioner was found guilty of murder and arson in the third degree March 2, 1973. He was sentenced to a prison term of twenty-five years to life which he is currently serving in the Attica (N.Y.) Correctional Facility. His conviction was affirmed by the Appellate Division, Fourth Department June 27, 1974. The New York Court of Appeals denied leave to appeal October 8, 1974.

Petitioner alleges he is entitled to federal relief because there was insufficient evidence to find him guilty beyond a reasonable doubt and because the prosecutor refused to divulge exculpatory evidence to him before trial.[1] The state courts were

---

1. In July 1979 I assigned Robert Friedman, Esq. to represent petitioner in this matter. The claims in this action are those raised in petitioner's Amended Petition filed August 29, 1979. The parties appeared for oral argument September 22, 1980. Petitioner's counsel, however, inadvertently misplaced the state court records. The court was unable to obtain replacement copies of the state court records

presented with an opportunity to decide the federal constitutional issues underlying petitioner's claims. *See,* Defendant-Appellant's Brief, Points III, XIV. As such, petitioner's exhaustion of state court remedies obligations have been satisfied and the merits of his claims can be addressed. *Picard v. Connor,* 404 U.S. 270, 276, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Johnson v. Metz,* 609 F.2d 1052, 1053–54 (2d Cir. 1979); 28 U.S.C. § 2254(b) & (c).

On the night of April 15, 1972 Peggy Greene, the victim, went with a friend to the Brick Wall Restaurant near Albion, New York. Also at the restaurant that night was petitioner who had come with Mary Taylor and their acquaintances, Roosevelt Jordan and Annie Jordan. According to the testimony, the Jordans, Mary Taylor, petitioner and Greene left the restaurant together at roughly 2 a. m. April 16th. Petitioner, who was driving, dropped the Jordans off at their trailer and drove away with Taylor and Greene.

Sometime before noon, one Dion Benz noticed smoke pouring from a small wooden building located on a dirt lane near the road on which he was driving. Benz heard a noise inside and tried to enter, but the heat and smoke prevented him from doing so. He became excited and left for help. He later testified at trial that the noise did not sound human (Transcript, at 796).

The Elba Fire Chief, Eugene Boldt, arrived at the scene within four minutes of receiving the fire call. He noticed that the location and intense heat of the fire were centered in the bedroom. The mattress, the ceiling and the linoleum floor beneath the bed were entirely burned. The body of a human being, later identified as Peggy Greene, was found on the bedsprings.

The Genesee County Coroner, Dr. Dominick Cultrara, examined the body at the fire scene. He ordered an autopsy, and filed a certificate of death which listed the cause of death as accidental due to carbon monoxide poisoning from the fumes of the fire. When Dr. Cultrara reviewed the autopsy report he received in September, he found the body contained neither carbon monoxide nor blood alcohol. Based on the autopsy report and the Sheriffs' Department investigation report, which included Mary Taylor's statement that petitioner told her he had strangled the victim and then set fire to her coat, the coroner concluded Greene's death was actually caused by strangulation prior to the fire rather than by carbon monoxide poisoning (Transcript, at 1779, 1781–1784). Dr. Cultrara noted his revised opinion in his coroner's report in September 1972 but did not amend the death certificate until January 4, 1973.

At trial, Mary Taylor was the prosecution's chief witness. She testified that petitioner planned a scheme to persuade some girl at the Brick Wall Restaurant to spend the night with him. Mary Taylor participated in the scheme and convinced Peggy Greene to go with petitioner. After dropping off the Jordans later that night, petitioner drove with Taylor and Greene to a wooden building down a dirt lane off the Spoilbank Road. When they entered the building, petitioner told Greene to take off her clothes. When Greene had only her bra on, petitioner complained he was cold and wanted to leave. Greene wrapped herself with her coat, and the three of them left the building.

According to Taylor, petitioner then told her he was going to kill Greene (Transcript, at 2051). After driving a while, petitioner stopped the car and forced Greene to get into the trunk. He dropped Mary Taylor off at her house and said he would return (Transcript, at 2054).

Taylor testified further that petitioner returned at approximately 11 a. m. that morning. Petitioner allegedly told her how he had strangled Peggy Greene on the bed in the wooden building, and then set fire to her coat before leaving because Greene knew too much about him and Taylor (Transcript, at 2062–2065).

Petitioner and Taylor then drove from her home through muckland farm area to a labor camp. On the way, petitioner noticed

from the Genesee County Court Clerk until May 29, 1981.

some of Greene's clothes, including her lavender pants, under the car seat. They stopped on a dirt road and burned the clothes (Transcript, at 2091).

A muck farm employee testified he saw a man and woman burning something as he drove along the road. He stopped and told them to put the fire out. Although the farm hand was unable to identify petitioner at trial, he recalled the color of Mary Taylor's coat, petitioner's shiny black shoes, and the automobile (Transcript, at 2379–2388). Sheriff's deputies later found finely knit lavender cloth in the remains of the fire, which was introduced as evidence.

Taylor admitted in court that she initially had denied knowledge of Greene's death on at least two occasions. After further questioning, however, she later had told the police that petitioner had murdered the victim.

■ To determine whether the prosecution's evidence is sufficient for habeas corpus purposes, the well-settled test is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *Donaldson v. Dalsheim*, 508 F.Supp. 294, 296 (S.D.N.Y.1981). Petitioner has the burden of showing that such is not the case. He claims he has fulfilled his burden because the evidence was constitutionally insufficient to prove either that the victim was murdered, or that he was the perpetrator.

Reviewing the evidence in the light most favorable to the prosecution, a rational trier of fact well could have found that the victim was murdered. It is true that the evidence of the victim's cause of death was not entirely consistent. Dr. Cultrara testified that his quick examination of the body's remains at the scene of the fire led him to believe the victim had died accidentally of carbon monoxide poisoning due to smoke inhalation. When he later analyzed the autopsy reports which showed the absence of carbon monoxide or alcohol in the victim's body, however, he altered his opinion. According to the coroner, the absence of carbon monoxide and blood alcohol, combined with body characteristics which eliminated other possible causes of death, convincingly demonstrated the victim's death had occurred before the fire had begun. After reading the Sheriff's report which included petitioner's alleged confession to Mary Taylor, the coroner concluded the victim died of strangulation.

I agree with petitioner that the evidence before Cultrara did not support his latter conclusion. He testified that he did not reexamine the body after his initial brief examination at the scene. Although the victim's neck and surrounding tissues were destroyed by the fire, the doctor who performed the autopsy observed no signs of physical violence on the body's remains. In her opinion, the body's remains were so destroyed that the cause of death could not be determined (Transcript, at 851–852). The coroner conceded that Taylor's statement that petitioner strangled the victim was a major factor in his revised opinion that the victim died by strangulation (Transcript, at 1784). He was unable to point to any medical evidence otherwise supporting his death by strangulation theory. In short, apart from petitioner's alleged confession, there was no evidence that Greene was strangled to death.

■ Nevertheless, the evidence sufficiently supported the jury's conclusion that the victim's death was caused by murder rather than by accident. The medical evidence revealed that death by smoke inhalation was virtually impossible, and death by another accidental cause, such as a heart attack, was unlikely. Non-medical evidence, such as the suspicious origin of the fire and Mary Taylor's testimony, further buttressed the jury's conclusion. Although much of the evidence was circumstantial, it was sufficient as a matter of constitutional law to support a determination that the victim was killed.

Petitioner further maintains that the evidence was constitutionally insufficient to

link him to the victim's murder. His conclusion is based on a two-step analysis. He contends first that Mary Taylor's testimony was so palpably perjurious that it should have been excluded from the jury's consideration. Excluding Taylor's improperly admitted testimony, petitioner concludes, the remaining evidence was totally inadequate to sustain a finding of his guilt. In fact, as petitioner points out, even the trial judge observed that without Mary Taylor's testimony a conviction would be doubtful (Transcript, at 1971).

Petitioner points to many inconsistencies and contradictions in Taylor's testimony to support his argument. She had denied but later admitted that she had originally accused one Purcell Patterson of starting the fire. She admitted lying to Peggy Greene (Transcript, at 2192), to the grand jury (Transcript, at 2493–2494), and to the police (Transcript, at 2239, 2272). Conversely, she denied on the witness stand many facts she had previously admitted to the grand jury (Transcript, at 2257), in a prior interview with defense counsel (Transcript, at 2244–2250), and statements she made to hospital personnel (Transcript, at 2543). Finally, she admitted giving sworn statements to the police on April 20th and April 29th which did not implicate petitioner in any way.

■ These and other examples certainly undermine Mary Taylor's credibility. Nevertheless, whether a witness is relating the truth is a factual matter exclusively within the province of the jury to determine. Petitioner's attorney vigorously and aggressively attacked her credibility on cross-examination. He elicited admissions of previous lies and impeached her with her prior inconsistent statements. Indeed, virtually all the flaws in Taylor's testimony discussed above were brought to the jury's attention by defense counsel. It was the jury's function to decide whether Taylor's version of the events was believable. As a federal habeas court, I cannot reverse the the jury's determination that she was a credible witness. *Mapp v. Clement*, 451 F.Supp. 505, 510 (S.D.N.Y.), *aff'd*, 591 F.2d

1330 (2d Cir. 1978), *cert. denied*, 440 U.S. 948, 99 S.Ct. 1428, 59 L.Ed.2d 637 (1979); *United States ex rel. Cole v. LaVallee*, 376 F.Supp. 6, 11 (S.D.N.Y.1974). For this reason, petitioner's insistence that his conviction cannot stand because the evidence other than Taylor's testimony was constitutionally insufficient is without merit. With her testimony, such was not the case.

Petitioner maintains, however, that this case must be treated differently because the chief evidence of both the victim's murder and his role was his confession to a third party. Under New York's Criminal Procedural Law § 60.50, a person may not be convicted on the basis of a confession without additional proof that the offense charged has been committed. New York courts have consistently held "that the evidence introduced in addition to a defendant's confession must establish that a killing occurred through a criminal agency." *People v. Pendleton*, 42 A.D.2d 144, 148, 345 N.Y.S.2d 773 (4th Dep't 1973). Because the coroner relied on Mary Taylor's written version of petitioner's admission to conclude that the victim was strangled, the coroner's testimony cannot constitute the requisite independent evidence. Inasmuch as the prosecution relied on the coroner's testimony to prove Greene was murdered, petitioner avers, petitioner's confession was not properly corroborated by independent evidence as required by section 60.50.

■ Petitioner's argument is syllogistically sound as it relates to the coroner's conclusion that Greene was strangled to death. However, for the reasons discussed above, I am satisfied there was ample evidence independent of petitioner's confession to find that the victim's death was not accidental.

■ Even if the independent evidence of Greene's murder were inadequate under section 60.50, however, habeas corpus relief could not be granted on such ground. New York's confession corroboration rule is a state law requirement which embodies no federal constitutional principle. New York's failure to comply with its own evidentiary rule is a matter of state law which

cannot be reviewed by a federal habeas court. *Perez v. Metz,* 459 F.Supp. 1131, 1137 (S.D.N.Y.1977).

■ As a second ground for relief, petitioner claims the state violated his constitutional rights under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), with respect to the exculpatory statements of Benz. Benz testified at trial that he had heard a noise in the burning building which sounded like the whistling noises of a fire. However, Benz had told the police on the day he reported the fire that he heard a human voice coming from inside the building. Petitioner claims that, although he requested all *Brady* material prior to the trial, the prosecutor did not divulge Benz's prior exculpatory statement about the human voice until the completion of Benz's direct examination.

Had Benz's statement not been disclosed to petitioner's defense counsel at all, such omission could well have comprised constitutional error. However, the record reveals that petitioner's lawyer possessed Benz's statement to the police, which referred to a human voice, when he cross-examined Benz. In the course of his cross-examination, he had the statement marked as the court's exhibit (Transcript, at 779), he aggressively confronted Benz about his inconsistent descriptions of the noise he said he heard (Transcript, at 781–790; 795–799) and he later introduced the statement as a defense exhibit (Transcript, at 2534). Benz also described the noise he heard as a human voice in his testimony before the grand jury (Transcript, at 786). Although petitioner's defense counsel was not given Benz's grand jury minutes until after direct examination (Transcript, at 766), the Judge recessed the trial to enable petitioner's counsel to review the minutes (Transcript, at 767).

Under the circumstances, it cannot be said that any *Brady* violation occurred, much less one amounting to constitutional error. The critical inquiry under *Brady v. Maryland* is whether the undisclosed exculpatory evidence could have created a reasonable doubt at trial which did not otherwise exist. *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976). In this case, it is unnecessary to reach this question because the key component of a *Brady* infirmity—to wit, undisclosed exculpatory evidence—is not present. The record plainly reveals that petitioner's defense counsel not only was aware of Benz's prior inconsistent statement to the police, but used it insistently to attack Benz's credibility. Moreover, petitioner's lawyer reviewed Benz's grand jury testimony before he cross-examined Benz. The prosecutor's failure to turn over the grand jury minutes to petitioner's defense counsel until his direct examination of the witness was finished is simply not equivalent to the total failure to divulge exculpatory evidence which *Brady v. Maryland* condemns. *See, United States ex rel. Lucas v. Regan,* 503 F.2d 1, 3, n.1 (2d Cir. 1974), *cert. denied,* 420 U.S. 939, 95 S.Ct. 1149, 43 L.Ed.2d 415 (1975). Inasmuch as the exculpatory evidence in question was fully presented to the jury, petitioner's *Brady* claim is without merit.

It is therefore hereby

ORDERED that petitioner's application for habeas corpus relief is denied. Certificate of probable cause is denied.

Permission to appeal in forma pauperis is also denied with the qualification that the petitioner may file a notice of appeal with the Clerk of the United States District Court, United States Courthouse, Buffalo, N.Y., 14202, without payment of filing fees. Notice of appeal must be filed within thirty days of the date of the judgment.

This denial does not prevent the petitioner from applying directly to the Court of Appeals for the Second Circuit, United States Courthouse, Foley Square, New York, N. Y., 10007, for a certificate of probable cause and for permission to prosecute an appeal in forma pauperis.