Eddie STEELE, Plaintiff,

v.

Hans G. WALTER, Superintendent, Auburn Correctional Facility, Defendant.

No. 97–CV–0050A.

United States District Court, W.D. New York.

April 21, 1998.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Carol E. Heckman pursuant to 28 U.S.C. § 636(b)(1), on March 18, 1997. On March 6, 1997, defendant filed a motion to dismiss and on March 14, 1997, plaintiff filed a motion to amend the petition. On, October 16, 1997, Magistrate Judge Carol E. Heckman filed a Report and Recommendation and Order, granting plaintiff's motion to amend the petition and recommending that defendant's motion to dismiss be granted. Plaintiff filed objections to the Magistrate Judge's

Report and Recommendation on October 30, 1997.[1]

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions of the parties, the Court adopts the proposed findings of the Report and Recommendation.

Accordingly, for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, defendant's motion to dismiss is granted. The Clerk of the Court is directed to take all steps necessary to close this case.

The Court hereby denies petitioner's motion for a certificate of appealability because he has failed to make a substantial showing of the denial of a constitutional right. 42 U.S.C. § 2253. Further, the Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is hereby denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION AND ORDER

HECKMAN, United States Magistrate Judge.

Oct. 16, 1997.

This petition for habeas corpus relief under 28 U.S.C. § 2254 has been referred to the undersigned by Hon. Richard J. Arcara pursuant to 28 U.S.C. § 636(b)(1). Petitioner has moved to amend the petition to delete unexhausted claims, and respondent has moved to dismiss the petition. For the following reasons, petitioner's motion to amend is granted, and it is recommended that respondent's motion to dismiss be granted.

### BACKGROUND

Petitioner filed this action seeking federal court habeas corpus review of his state court judgment of conviction for murder in the second degree and criminal possession of a weapon in the second degree. Respondent Hans G. Walter is the Superintendent of the Auburn Correctional Facility, maintained by the New York State Department of Correctional Services ("DOCS"), where petitioner was incarcerated at the time he filed this action.

The pertinent facts are as follows. On November 4, 1989, petitioner was indicted by the Erie County Grand Jury on one count of murder in the second degree under N.Y.Penal Law § 125.25(1), and one count of criminal possession of a weapon in the fourth degree under N.Y.Penal Law § 265.01(2). The indictment charged petitioner with causing the stabbing death of Robert Steele (no relation to petitioner). The stabbing occurred at approximately 1:30 a.m. on October 18, 1988, near the intersection of Virginia and Locust Streets in the City of Buffalo, New York. On December 5, 1988, Erie County Judge Timothy Drury assigned Frank Buffamonte, Esq., to represent petitioner at trial (State Court Records, Ex. A).

Petitioner's trial commenced on July 18, 1989. After jury selection, the prosecution delivered to defense counsel material deemed responsive to defense counsel's pretrial request for witness statements under *People v. Rosario,* 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881, *cert. denied,* 368 U.S. 866, 82 S.Ct. 117, 7 L.Ed.2d 64 (1961); *see* N.Y.Crim. Proc.Law ("N.Y.C.P.L.") § 240.45(1)(a).[2] In-

---

1. In an Order filed by the Court on February 5, 1998, the Court inadvertently misstated that no objections were filed. Objections were in fact filed and the Court considered those objections in adopting the Magistrate Judge's Report and Recommendation. The February 5, 1998 Order is hereby vacated. The Clerk of court is hereby ordered to enter a new judgment in accordance with this Order.

2. N.Y.C.P.L. § 240.45(1)(a) provides as follows:
   1. After the jury has been sworn and before the prosecutor's opening address ... the prosecutor shall, subject to a protective order, make available to the defendant:
   (a) [a]ny written or recorded statement, including any testimony before a grand jury and any examination videotaped pursuant to section 190.32 of this chapter, made by a person

cluded in these materials was an interdepartmental communication signed by Buffalo Municipal Housing Authority ("BMHA") Officer Thomas Mulhern, which stated as follows:

> We attempted to keep the scene clear. We also spoke with Jeanette Hines of Virginia Street who told us that the dead man had an argument with the man who lives at 103 Locust, a B/M Max Ridgeway, date of birth 7/6/57, about a half hour before we found the dead man.

(T. 27).[3] Defense counsel objected on the basis that this statement should have been produced earlier in response to defendant's request for exculpatory material under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The prosecutor argued that Ms. Hines' statement to the BMHA officer was not *Brady* material. The trial judge agreed with the prosecutor. The judge advised defense counsel that the material had been made available for use at trial, and that if he needed an adjournment to look into the matter further, she would grant it. No adjournment was requested (T. 26–29).

At trial, Max Ridgeway testified that on October 18, 1988 he was with his "girlfriend" Juanita Nelson at her upstairs apartment on the corner of Virginia and Locust Streets. At about 1:30 a.m., Juanita went downstairs to answer a loud banging on the side door. It was the victim, Robert Steele. Max heard hollering, and went downstairs to see what was happening. He recognized Robert, but did not know him personally. Robert was drunk, and he was talking loudly. He had a large bottle of beer in a paper bag. He wanted to come in out of the rain. He also wanted to pay Juanita five dollars that he owed her. Max told Robert to leave because it was late and people were trying to sleep. He told Robert to come back at another time. Robert left, and Max went back inside (T. 82–87).

Max and Juanita returned to the upstairs front room where they were watching television. Max was sitting on the couch next to an open window. He heard two men "arguing or talking" on the street (T. 88). He looked out of the window and saw Robert Steele talking to petitioner. Max had seen petitioner several times in the neighborhood. Petitioner was wearing overalls and a yellow hardhat, and he was carrying a reddish-colored hardhat (T. 87–90).

Max testified that he heard petitioner ask Robert for a cigarette. Robert turned toward petitioner and approached him while reaching in his pocket for a cigarette. Max heard petitioner say, "I told you about fucking with me" (T. 91). Max saw petitioner hit Robert in the chest with "something in his right hand" (T. 92). Robert grabbed himself and backed up. He spun around, spilling foam out of his beer bottle. He made it across the street, and fell to the ground (T. 93). Max saw petitioner put the object in his pocket and walk down Virginia Street toward Lemon Street (T. 94).

Max testified that Juanita asked him to help Robert, but he told Juanita he did not want to get involved. He did not call the police. He saw some people standing around Robert as he lay on the ground. The police arrived about a half-hour later (T. 97).

On cross-examination, defense counsel questioned Max about a January, 1984 charge of attempted reckless endangerment (T. 154–57) and bail revocation proceedings in February, 1984 (T. 157). Defense counsel then questioned Max about a March 5, 1984 incident involving police officers Panicali and Lewis. The prosecutor objected on the ground that the March, 1984 matter had been dismissed and sealed by the court (T. 158–59). After dismissing the jury and hearing argument, the judge sustained the prosecutor's objection, stating as follows:

> I believe that the District Attorney is correct and it would not be proper to ask about matters that were sealed and/or dismissed unless there was further investigation by [the] defense attorney indicating

whom the prosecutor intends to call as a witness at trial, and which related to the subject matter of the witnesses's testimony.

**3.** References preceded by "T." are to pages of the transcript of petitioner's trial, on file with the Clerk of the Court as Ex. A to petitioner's State Court Records.

that they were dismissed ... not on the merits, but for some other reason.

(T. 162)

The prosecution called a total of twelve witnesses during the course of the trial. Petitioner did not put on a defense. On July 25, 1989, the jury returned a verdict of guilty on both counts of the indictment (T. 420). On September 1, 1989, petitioner appeared before the trial judge for sentencing. Petitioner moved to set aside the verdict pursuant to N.Y.C.P.L. § 330.30. After hearing argument on the motion, the judge denied petitioner's motion (S.8).[4] Petitioner was sentenced to an indefinite prison term of twenty years to life on the murder conviction, and a concurrent definite term of one year on weapons conviction (S.13–15).

Petitioner appealed, and Barbara Davies Eberl, Esq., from the Legal Aid Bureau of Buffalo was assigned as appellate counsel. Petitioner stated the following grounds for appeal:

1. The trial court improperly limited cross-examination of Max Ridgeway as to the underlying facts of his prior bad acts;

2. The prosecution failed to disclose the statement of Jeannette Hines as exculpatory evidence under *Brady;*

3. The verdict was against the weight of the evidence; and,

4. The sentence was harsh and excessive.

(*See* Petitioner's Appellate Brief dated August 15, 1990, State Court Records, Ex. B).

On December 21, 1990, the Appellate Division, Fourth Department unanimously affirmed the conviction. *People v. Steele,* 168 A.D.2d 937, 565 N.Y.S.2d 339 (4th Dept. 1990). The appellate court expressly ruled on the merits of each of the grounds raised on appeal. *Id.* On April 19, 1991, petitioner's application for leave to appeal was denied by the New York Court of Appeals. *People v.*

*Steele,* 77 N.Y.2d 967, 570 N.Y.S.2d 501, 573 N.E.2d 589 (1991).

On May 8, 1995, petitioner made a motion *pro se* pursuant to N.Y.C.P.L. § 440.10 [5] to vacate the judgment of conviction on the ground of ineffective assistance of trial counsel. Petitioner claimed that his trial counsel was ineffective because he failed to request an adjournment in order to investigate the exculpatory nature of Jeannette Hines' statement to the BMHA police (*see* Petitioner's § 440.10 Motion, State Court Records, Ex. C). On June 21, 1995, Justice Wolfgang denied petitioner's motion. According to the trial judge, "the record contain[ed] sufficient facts to have permitted appellate review of counsel's handling of the issue ...," and trial counsel's performance was not constitutionally deficient in any event (June 21, 1995 Memorandum and Order, State Court Records, Ex. C). On September 29, 1995, the Fourth Department denied petitioner's application for leave to appeal from Judge Wolfgang's June 21, 1995 order (State Court Records, Ex. C).

On November 28, 1995, petitioner made an application *pro se* for a writ of error *coram nobis,* raising the same claim of ineffective assistance of trial counsel that he raised in his § 440.10 motion (State Court Records, Ex. D). Petitioner also raised the additional claim that his appellate counsel's assistance was constitutionally deficient because she failed to assert ineffective assistance of trial counsel as a ground for appeal (*id.*). On February 2, 1996, the Fourth Department denied petitioner's application (*id.*).

On January 27, 1997, petitioner filed this action seeking federal court habeas corpus review on the following grounds:

1. The trial court improperly limited Max Ridgeway's cross-examination;

2. The prosecution failed to disclose *Brady* material;

---

4. References preceded by "S." are to pages of the transcript of petitioner's sentencing, on file with the Clerk of the Court as Ex. A to petitioner's State Court Records.

5. N.Y.C.P.L. § 440.10 provides, in pertinent part:
   1. At any time after the entry of a judgment, the court in which it was entered may, upon

motion of the defendant, vacate such judgment upon the ground that:

      \*     \*     \*     \*     \*     \*

(h) The judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States.

3. The verdict was against the weight of the evidence;

4. Harsh and excessive sentence;

5. Ineffective assistance of trial counsel; and,

6. Ineffective assistance of appellate counsel.

(Item 1, ¶ 12).

On March 7, 1996, respondent filed an answer (Item 5) and at the same time moved to dismiss the petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts and Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure (Item 6). Respondent asserts the following grounds for dismissal of the petition:

1. Petitioner did not exhaust his "excessive sentence" claim;

2. Petitioner procedurally defaulted on his "ineffective assistance of trial counsel" claim; and,

3. Lack of merit.

On March 14, 1997, petitioner filed a motion to amend his petition to delete the "excessive sentence" claim as unexhausted (Item 8). This motion is not opposed.

For the reasons that follow, petitioner's motion to amend is granted, and it is recommended that respondent's motion be granted.

### DISCUSSION

#### I. Exhaustion and Procedural Default.

The federal habeas corpus statute requires that a state prisoner seeking federal review of his state court conviction must first exhaust his available state remedies. 28 U.S.C. § 2254(b). To fulfill the exhaustion requirement, the petitioner must have "fairly presented" his or her federal claim to the highest state court from which a decision can be had. *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir.1994), *cert. denied*, 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995); *Daye v. Attorney General of the State of New York*, 696 F.2d 186, 190 n. 3 (2d Cir.1982), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). In order to fairly present a claim to the appropriate state court, the petitioner must set forth all the essential factual allegations and substantially the same legal doctrines asserted in the federal petition, and must seek available appellate review of the denial of the claim. *Daye, supra* at 191; *see also Norwood v. Hanslmaier*, 1997 WL 67669, at *2 (E.D.N.Y. February 11, 1997).

The exhaustion requirement is satisfied if the nature or presentation of the claim in state court was likely to alert that court to the claim's federal nature. *Daye, supra*, 696 F.2d at 192. As the Second Circuit stated in *Daye*:

> In summary, the ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of fact that is well within the mainstream of constitutional litigation.

*Id.* at 194.

A second impediment to federal habeas corpus review, aside from exhaustion, is the doctrine of procedural default. When a state court refuses to consider the merits of a petitioner's claim because of some procedural failure, and the petitioner no longer has recourse to state review of that claim, "then a federal court may not review those merits in a collateral habeas corpus proceeding, unless petitioner demonstrates both good cause for and actual prejudice resulting from his procedural noncompliance...." *Rosenfeld v. Dunham*, 820 F.2d 52, 54 (2d Cir.) (citing *Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), and *Wainright v. Sykes*, 433 U.S. 72, 86–87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)), *cert. denied*, 484 U.S. 968, 108 S.Ct. 463, 98 L.Ed.2d 402 (1987); *see also Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Castille v. Peoples*, 489 U.S. 346, 350, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989); *Teague v. Lane*, 489

U.S. 288, 297–98, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *Harris v. Reed,* 489 U.S. 255, 261–62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

■ As an initial matter, in his motion papers petitioner concedes that his "excessive sentence" claim was not presented on appeal in a manner that alerted the state courts to the federal constitutional nature of the claim, and he requests that the court delete that claim as unexhausted. Upon review of the appellate briefs submitted as part of petitioner's state court records, and in the absence of any opposition to petitioner's motion to amend, that motion is granted.

■ With respect to the remaining claims presented on direct appeal, a review of the state court records clearly shows that petitioner took every appropriate step to fairly present each of these claims to the highest state courts, and that the claims were presented in such a way as to call to mind federal constitutional rights. Indeed, respondent has not specifically asserted an exhaustion challenge to any of these claims. While this does not constitute a waiver of the exhaustion requirement, *see* 28 U.S.C. § 2254(b)(3), it is pertinent to the court's inquiry.

In addition, as demonstrated by the discussion above, petitioner fairly presented his ineffective assistance of trial counsel claim to the state courts by way of his § 440.10 motion. The trial judge considered the merits of this claim, and petitioner's request for appellate review was denied. Petitioner also presented his claims of ineffective assistance of both trial and appellate counsel to the state appellate courts by way of his *coram nobis* application. The Appellate Division's February 2, 1996 order denying the application did not clearly specify whether the denial was based on the merits or on some procedural failure.

Finally, 28 U.S.C. § 2254(b)(2), amended effective April 24, 1996, provides:

> An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

This provision allows a district court to reach the merits of a habeas corpus petition despite nonexhaustion, thereby "effectuat[ing] congressional intent, conserv[ing] judicial resources, and afford[ing] petitioner prompt adjudication of his claim." *Cowan v. Artuz,* 1996 WL 631726, at *5 (S.D.N.Y.1996), *quoted in Loving v. O'Keefe,* 960 F.Supp. 46, 49 (S.D.N.Y.1997).

Under these circumstances, I find that neither the doctrine of exhaustion nor the doctrine of procedural default prevents this court from considering the merits of petitioner's claims for habeas corpus relief.

## II. Cross–examination of Max Ridgeway.

■ Petitioner claims, as he did on direct appeal, that the trial judge improperly restricted defense counsel's cross-examination of Max Ridgeway by refusing to allow questioning about prior bad acts involving police officers Panicali and Lewis. According to petitioner, this ruling violated his Sixth Amendment right to confront adverse witnesses.

As found by the appellate court, and as revealed by the State Court Records, the trial judge properly limited defense counsel's questioning of Ridgeway about charges that had been dismissed and sealed. This finding is in accord with federal court cases that have examined the propriety of using evidence of a witness's convictions for impeachment purposes. *See, e.g., LeBon v. United States,* 899 F.Supp. 722, 730 (D.Mass.) (Fed. R.Evid. 609[6] permits impeachment only by

---

**6.** Fed.R.Evid. 609(a) provides:
**General rule.** For the purpose of attacking the credibility of a witness,
(1) evidence that a witness other than an accused has been convicted of a crime shall be admitted ... if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was con-

victed, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and

(2) evidence that any witness has been convicted of a crime shall be admitted if it involved

evidence of a conviction, not by evidence of criminal charges filed against the witness; trial court's exclusion of evidence of criminal charges filed against witness but subsequently dismissed did not provide a basis for habeas corpus relief); *aff'd*, 72 F.3d 121 (1995), *cert. denied*, 517 U.S. 1249, 116 S.Ct. 2510, 135 L.Ed.2d 199 (1996).

In addition, the appellate court's factual finding "that the charges against Ridgeway were dismissed and that the dismissal was not the result of a plea bargain or the grant of youthful offender treatment . . .," *People v. Steele, supra,* .168 A.D.2d at 938, 565 N.Y.S.2d at 339, must be presumed by this court to be correct, absent "clear and convincing evidence" to rebut the presumption. 28 U.S.C. § 2254(e)(1). Petitioner has not made any showing that such evidence is available, and in fact was unable to make such a showing at his trial, on appeal, or on his applications for state court collateral review.

Accordingly, I find that petitioner is not entitled to federal habeas corpus relief on the ground that the trial court improperly limited defense counsel's cross-examination of Max Ridgeway.

### III.  Failure to Disclose *Brady* Material.

■ To demonstrate a *Brady* violation, the habeas petitioner must prove that the prosecutor suppressed material evidence. *Brady v. Maryland, supra,* 373 U.S. at 87, 83 S.Ct. 1194; *see also Johnson v. Artuz*, 101 F.3d 1392 (2d Cir.1996). A petitioner cannot establish a *Brady* violation when defense counsel ultimately received the materials and had an opportunity to prepare for cross-examination using those materials. *Edkin v. Travis*, 969 F.Supp. 139, 143 (W.D.N.Y.1997); *Forrest v. Mitchell*, 1992 WL 367039, at * 3 (S.D.N.Y. December 2, 1992), *aff'd*, 22 F.3d 1092 (2d Cir.1994); *Robinson v. Smith*, 530 F.Supp. 1386, 1391 (W.D.N.Y.1982).

In this case, as discussed above, the trial transcript reveals that the prosecution turned the materials over to defense counsel after jury selection. The trial court gave defense counsel the opportunity to request

dishonesty or false statement, regardless of the

an adjournment in order to investigate the materiality of Jeannette Hines' statement to the BMHA officers or its utility for cross-examination purposes, but no adjournment was requested. Indeed, there is no evidence that the production of the BMHA correspondence prior to opening statements and submission of proof caused petitioner any prejudice. As the appellate court found, "the delay in producing this one item does not warrant reversal." *People v. Steele, supra.*

Accordingly, I find that petitioner is not entitled to federal habeas corpus relief on the ground that the prosecution failed to disclose exculpatory evidence under *Brady v. Maryland.*

### IV.  Verdict Against the Weight of the Evidence.

■ The Due Process Clause of the Fourteenth Amendment prohibits conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged." *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). When considering a habeas petitioner's claim that the state court verdict was against the weight of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also Einaugler v. Supreme Court of the State of New York,* 109 F.3d 836, 839–40 (2d Cir. 1997); *Nieves v. Smith*, 1997 WL 289730, *1 (S.D.N.Y. May 30, 1997).

In this case, petitioner was convicted of second degree murder under N.Y.Penal Law § 125.25(1), which provides:

A person is guilty of murder in the second degree when . . . [w]ith intent to cause the death of another person, he causes the death of such person. . . .

The jury was properly instructed by the trial judge that, in order to find petitioner guilty of second degree murder, the jury must find

punishment.

that the prosecution had proved the following three elements beyond a reasonable doubt:

One, that on October 18th, 1988, ... [petitioner] stabbed Robert Steele; two, that he did so with the intent to cause the death of Robert Steele; three, that [petitioner]'s act did, in fact, cause the death of Robert Steele.

(T. 411).

Viewing the evidence presented at trial in the light most favorable to the prosecution, I find that a rational juror could conclude that there was sufficient evidence to prove these elements beyond a reasonable doubt. Max Ridgeway testified that he saw petitioner thrust an object into the victim's chest, and that he saw the victim clutch at his chest, back away and fall to the ground (T. 90–94). Both Ridgeway and Juanita Nelson testified that they heard petitioner say, "I told you about fucking with me" (T. 94, 200), and that they observed petitioner wearing a yellow hardhat (T. 90, 212). Ridgeway also testified that he observed petitioner carrying a reddish-colored hardhat (T. 90). Police officer Mark Stambach testified that a search of petitioner's mother's house on October 19, 1988 resulted in the discovery of a yellow hardhat and a rust-colored hardhat (T. 295–98). Ridgeway identified the hardhats as the ones which he had observed petitioner wearing and carrying on October 18, 1988 (T. 104–05).

Accordingly, based on this eyewitness testimony and physical evidence, I find that a rational jury could conclude that the prosecution established the essential elements of the crime of second degree murder beyond a reasonable doubt. Petitioner is therefore not entitled to habeas corpus relief on the ground that the verdict was against the weight of the evidence.

### V. Ineffective Assistance of Trial Counsel.

█ The Sixth Amendment guarantees effective assistance of counsel. *See McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) ("It has long been recognized that the right to counsel is the right to the effective assistance of counsel."). To prevail on a claim of ineffec-

tive assistance of trial counsel, a habeas corpus petitioner must satisfy the two-part test established by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The petitioner must establish (1) that trial counsel's representation was unreasonable under the "prevailing professional norms," *id.* at 688, 104 S.Ct. 2052, and (2) a reasonable probability that, but for counsel's errors, "the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052; *see also United States v. Javino,* 960 F.2d 1137, 1145 (2d Cir.), *cert. denied,* 506 U.S. 979, 113 S.Ct. 477, 121 L.Ed.2d 383 (1992); *Loving v. O'Keefe, supra,* 960 F.Supp. at 50.

Upon review of the record before the court, I find that the representation provided by petitioner's trial counsel was not unconstitutionally deficient. Counsel objected to the production of Jeannette Hines' statement on the first day of trial, and adequately preserved the *Brady* issue for appellate review. While counsel did not request an adjournment to investigate the materiality or usefulness of the statement, there has been no showing at any stage of the extensive state court appellate and collateral review proceedings, or on federal habeas review, to suggest that calling Jeannette Hines as a witness and questioning her about the statement would have affected the verdict.

In addition, counsel effectively called into question the credibility of the chief prosecution witness by way of his cross-examination and closing arguments, and provided a viable alternative theory of liability for the jury to consider (*see* T. 334–60).

Under the circumstances, therefore, I find that the record does not establish either a deficiency in the representation provided to petitioner by his trial counsel, or a reasonable probability that the result of the trial would have been different "but for counsel's unprofessional errors." *Strickland, supra,* 466 U.S. at 694, 104 S.Ct. 2052. Accordingly, petitioner is not entitled to habeas corpus relief on the ground of ineffective assistance of trial counsel.

## VI. Ineffective Assistance of Appellate Counsel.

 Finally, petitioner claims that the representation provided by his appellate counsel was deficient under the Sixth Amendment. This claim is also evaluated under the standard of *Strickland v. Washington, i.e.,* petitioner must establish that his attorney's representation on appeal was unreasonable under prevailing professional norms, and that there is a reasonable probability that, but for his attorney's errors, the result of the appeal would have been different. *See Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir.), *cert. denied,* 513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994).

The only argument put forth by petitioner in this regard is that his appellate counsel was ineffective because she failed to raise ineffectiveness of trial counsel as a ground for appeal. As the above discussion suggests, trial counsel's performance was not unconstitutionally deficient. Therefore, appellate counsel's failure to raise that issue on direct appeal was not unreasonable, and petitioner has failed to establish that this failure affected the outcome of the appeal.

In any case, a review of the appellate brief filed on petitioner's behalf shows no inadequacies of representation. Counsel made cogent, well-supported arguments in support of the grounds asserted before the Appellate Division, and made a convincing argument to the Court of Appeals for adoption of a new rule of law involving the cross-examination of a prosecution witness about the dismissal of criminal charges (*see* State Court Records, Ex. B).

Under the circumstances, therefore, I find that the record does not establish either a deficiency in the representation provided to petitioner by his appellate counsel, or a reasonable probability that the result of the appeal would have been different "but for counsel's unprofessional errors." *Strickland, supra,* 466 U.S. at 694, 104 S.Ct. 2052. Accordingly, petitioner is not entitled to habeas corpus relief on the ground of ineffective assistance of appellate counsel.

## CONCLUSION

For the foregoing reasons, petitioner's motion to amend (**Item 8**) is granted, and the claim of "excessive sentence" is deleted from the petition. It is recommended that respondent's motion to dismiss the petition (**Item 6**) be granted.